## W. T. STANLEY v. A. H. SAMPLES ET AL.

### (February 23, 1880.)

CONSTRUCTION OF WRITTEN INSTRUMENTS — WILL OR DEED — EVIDENCE OF PROBATE.—It is the duty of the court to determine whether an instrument has legal effect and what such legal effect is. And where the terms of an instrument showed it to be a will the court should have so instructed the jury; and it was error to submit to them the question whether it was a will or a deed.

APPEAL from Gonzales county. Opinion by WALKER, J.

Upon the questions involved in this case we hold:

1. A devise of "my own headright for one-third of a league of land, or the land that may be acquired thereby, or the money that may be obtained for either the certificate or the land," is sufficiently certain to pass to the devisees the land patented at the time the will was written under the certificate described as the headright of the testator. In this will the writer seems to have adopted the form of description to meet every transformation of interest an unsettled condition of land titles might produce.

2. The copy of the will and of the affidavit annexed to it, made by one of the subscribing witnesses, to the facts necessary to its probate, certified by the clerk of the court having custody of such will, and such transcript showing affirmatively that it was taken from probate records, was not proof of its probate sufficient of itself. The testimony, however, further showed the destruction of the court-house and of the probate records of the county, including the minutes-book, which would evidence the decree of probate if it existed. A subscribing witness, the one whose affidavit is annexed to the will, testified on the trial that the will had been "*probated*," and that " it was proved up by me." The court admitted the will in evidence and submitted it as a fact to the jury, and the jury found against the party exhibiting the will on other grounds. In such a case the court will not affirm the judgment on account of insufficiency of the preliminary evidence of the probate. There was some evidence to all the requisites to the admission. Had the court below demanded more testimony to the existence and contents of the order of the court admitting the will to probate, it may have been furnished. To affirm for such defect might destroy a right on the erroneous ruling of the court made in its favor. It would seem a safer course, before a second trial, to have the order substituted in the probate court, or entered *nunc pro tunc*, or even a new probate, there appearing no delay in presenting it for probate action.

3. It is not necessary that we decide whether the original testimony proving the will was properly admitted. There was ample proof of its preparation, signature, due execution, testamentary capacity, and subsequent death of the testator. There is great conflict in decisions whether the existence of courts of exclusive probate jurisdiction, to be exercised within general statutory modes of procedure, would or not exclude the right to the exercise of partial probate powers by other courts, whenever a will shall be drawn into litigation or form a link in the title of property in litigation.

Refusing to affirm on defects in plaintiff's case, we proceed to the assignments of error.

4. The record books of deeds kept in the several counties are but *copies*. P. D., art. 3715. They are not evidence under the statute; copies may be taken and used under statutory regulations. The memorandum of the date of filing of the several deeds in the books are *original* entries, and it would seem, on principle, might be evidenced by certified copies. The copy of the document from Montgomery county, certified by the district clerk in 1873, having custody of the land records, was not admissible under art. 3715, P. D., as insisted. Original books would not be, and copies under this section can only be used where the originals would be admissible.

5. But the document purports to relate to lands, to be designed to effect a conveyance of real estate described as in Montgomery and other counties. It was duly acknowledged for record by the maker, and under the registration laws it was properly recorded, whatever may be the legal effect of the instrument. P. D., art. 4977; Peterson v. Lowry, 48 Tex., 411.

The statute prescribes the use to be made of these records. P. D., art. 3716. The clerk shall give copies, which may be used as evidence under prescribed rules.

The facts authorizing the record may be presumed when they appear on the face of the paper. When copies are tendered in evidence upon an examination, the proper record

can be manifest if they exist. The three days' notice required by the statute may allow investigation, among other things, as to whether there may be fraud in the registration.

The theory of the plaintiffs is that the paper was actually destroyed by the maker several years before his death. The effect of said destruction would not limit rights under it to Montgomery county alone.

We see no necessary, if any, limitation in the statute to the use of copies only in courts held within the county from whose records they are taken. The transcript from Montgomery county was properly admitted in evidence.

6. This brings us to the controlling fact in this controversy: The effect of the instrument made August 26, 1843, by W. C. Jones to Simon Jones.

It is elementary that construction is not needed when an instrument, by its words, clearly expresses itself as to parties, things, and the change made, or to be made, by the writing upon the things with relation to the parties. It is also the duty of the court to determine whether an instrument has legal effect, and what such effect is. This is done by submitting it to the jury and giving to them the meaning or legal effect of the paper.

In the paper under investigation there is no ambiguity as to the parties nor things. Is there any as to *what is affirmed?* W. C. Jones *wills and bequeaths* certain things to Simon Jones. Expressed logically, as a proposition, it is that Wm. C. *is willing and bequeathing* to Simon Jones. The act of willing and bequeathing has, in technical and common language, the same signification. Wigram on Construction of Wills, p. 426.

Written out at length, the equivalent in expression is, disposing of property in the mode required in making a will; making, in writing, a legal expression of my wish, and a disposition of the property in a way that it shall take effect at my death.

The words "to have and to hold to him, the said Simon

Jones, as his own right and property, against myself, my heirs, executors and administrators forever," should not be allowed to change the character of estate, for the *habendum* is " void if it be repugnant to the estate granted " (4 Kent, 468; 2 Black, 298); nor do these words necessarily or reasonably negative the main proposition.

7. The court evidently had the case of Ferguson *v.* Ferguson, 27 Tex., 345, in view, and was governed by it in framing the general charge. Had the instrument been a deed by its operative words, but rendered uncertain by other clauses, as in that case, the charge would not be objectionable. The jury are told, as to the words " will and bequeath," that, if used in their legal or technical signification, the word " will " means the disposition of one's property to take effect after death. The word "bequeath" means to give personal property by will to another; but this word has been construed to mean *devise*, so as to pass title to real estate. The court fails to tell the jury that the presumption is that such is the meaning intended; and it fails to tell what is the untechnical or common meaning of the terms. It leaves an uncertainty that does not exist on the face of paper. Wigram on Construction of Wills, p. 426.

There having been no counter or explanatory charge asked, we would not reverse alone for this; but the jury were further charged: " That bad grammar, or the use of inappropriate words or expressions in the granting part of *the deed*, will not have the effect of changing the instrument from a deed to a will."

This informed the jury that the paper was, in form, a deed, and required evidence to alter it to a will; or it may have conveyed to the jury the idea that the terms " will and bequeath " were inappropriate terms to convey some other meaning. This was error.

The jury are told, further, that " the instrument must be construed by you most strongly against the maker; that is, if the paper under examination may be equally regarded as a deed or will, then it will be your duty to consider it a deed."

This, in effect, assumed it to be a deed. This rule appears not to be "applied to wills, nor to statutes, verdicts, judgments, etc., which are not words of parties." 2 Pars. Con., 506, note; Bac. Max. Reg., 3.

It is held in Ferguson v. Ferguson, 27 Tex., 345, that where, from the face of the paper, it is left doubtful whether it was intended to operate as a deed or will, the fact of delivery, if it be a fact, and the intention and purpose of its execution, should be submitted as questions of fact to the jury, "to be guided by the construction given to the terms of the instrument by the court, together with such extrinsic testimony as may be furnished by the parties to aid in their elucidation."

An examination of the testimony fails to show any facts throwing light upon the intent and purpose of the maker, other than appears on the face of the instrument. He was a bachelor; his nephew, Simon Jones, was a minor and residing with him. A league of land, the one-third league now in controversy, five hundred and fifty acres, and a town lot in Montgomery county, all his stock, consisting of horses, cattle and hogs, were all included in the instrument. No possession of any of this property was ever given by the maker or claimed by the nephew. The paper, after its record, seems to have been retained by the maker, who afterwards and continuously claimed the property, and who destroyed it several years before his death in the presence of the nephew, then of age. No claim was ever asserted under the instrument until 1860, three years after the death of the maker.

If these facts indicate an intent on the part of Wm. C. Jones as between the paper being a deed or will, his acts largely preponderate in favor of the testamentary intent. Its record stands alone as a recognition of its present effect, but whatever conclusion may be drawn from the record is overborne by the proof of the actual retention and non-delivery as a fact.

Again, the first instruction submitted to the jury as an

independent issue, "if you believe, from the evidence, that the instrument . . . *is a deed*, and conveys the land in controversy, then you will find for the defendant." To this the verdict is a direct response.

In the next proposition the jury are directed, "if the instrument . . . is *not a deed but a will*, then, and in that event, you will be governed in your findings by the rules and instructions hereinafter given you."

Then follows elaborate definitions suitable, had there been operative words making the document a deed, but rendered uncertain by other contradictory clauses of equal importance, as in the Ferguson Case.

It was but natural that the jury should act upon the proposition first submitted; they were not directed to investigate further unless they should believe it "not a deed *but a will*."

We do not consider that the charge, as to the meaning of the terms of the will, was in accordance with the law applied to the words of the document. Nor do we think that the extrinsic testimony evidenced an intention to make a deed.

The jury should have been told that the paper was a will in its terms; the only other matters which could have been submitted as to intent were, whether the parties had, in fact, acted upon it as if a deed by possession or otherwise.

For the misdirection, by the court, to the jury, and because the verdict is not sustained by the testimony, the cause should be reversed.